**JACKSON WALKER LLP**
Wasif H. Qureshi
Texas Bar No. 24048155 (admitted *pro hac vice*)
1401 McKinney, Suite 1900
Houston, TX 77010
Tel: (713) 752-4521
wqureshi@jw.com

*Attorney for Abaqus, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

|  |  |
|---|---|
| SOCIAL POSITIONING INPUT SYSTEMS, LLC, <br><br> Plaintiff(s), <br><br> vs. <br><br> ABAQUS, INC. <br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No.: 4:21-cv-06704-YGR

**ABAQUS'S FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM DUE TO UNPATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

DATE: January 25, 2022
TIME: 2:00 p.m.
LOCATION: Courtroom 1 – 4th Floor

Hon. Yvonne Gonzalez Rogers

---

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.   NATURE AND STAGE OF PROCEEDINGS.................................................1

II.  SUMMARY OF THE ARGUMENT ..............................................................1

III. STATEMENT OF FACTS ...............................................................................3

IV.  ARGUMENT....................................................................................................5
    A.  Legal Standard.........................................................................................5
        1.  Motions To Dismiss Under Rule 12(b)(6)..................................5
        2.  Patent Eligibility ........................................................................6
    B.  The '365 Patent is Invalid Under 35 U.S.C. § 101. ...............................9
        1.  Alice Step 1: The claims are directed to an abstract idea. ..........9
            (a)  The '365 Patent is directed to the abstract idea of
                sharing address information.............................................9
            (b)  Courts have found similar claims to be directed to
                patent- ineligible subject matter. ...................................12
        2.  Alice Step 2: The claims do not contain an inventive
            concept amounting to significantly more than the abstract
            idea. .........................................................................................15
        3.  The remaining claims are dependent on Claim 1 and are
            also abstract...............................................................................18

V.   CONCLUSION...............................................................................................18

CERTIFICATE OF SERVICE .............................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016) ...........................................................................12

*Alice Corp. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014).................................... 1, 6, 7, 8, 9, 10, 13, 14, 15, 17, 18

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
    841 F.3d 1288 (Fed. Cir. 2016) .............................................................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................5

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
    687 F.3d 1266 (Fed. Cir. 2012) ......................................................................6, 17

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................................5, 6

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ......................................................................7, 17

*Bilski v. Kappos,*
    561 U.S. 593 (2010).......................................................................................6, 8, 9

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ...........................................................................16

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014) .............................................................................9

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) .............................................................................8

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ...........................................................................10

*Dealertrack, Inc. v. Huber,*
    582 F.3d 1315 (Fed. Cir. 2012) .............................................................................8

*Diamond v. Diehr*,
    450 U.S. 175 (1981).............................................................................8

*Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) .......................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ......................................................13

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ......................................................11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings*,
    955 F.3d 1317 (Fed. Cir. 2020) ...........................................12, 13, 14

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ........................................................8

*Intellectual Ventures I LL v. Capital One Bank U.S.A.*,
    792 F.3d 1363 (Fed. Cir. 2015) ......................................................17

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ..........................................10, 12, 18

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717, 2017 WL 1151052 (N.D. Ill. 2016) ................14

*Lazy Y Ranch LTD v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ...........................................................5

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014).............................................12

*MacroPoint, LLC v. FourKites, Inc.*,
    No. 15–cv–1002, 2015 WL 6870118 (N.D. Ohio Nov. 6, 2015),.....14

*Mayo Collaborative Servs. v. Prometheus Labs.*,
    132 S. Ct. 1289 (2012)..............................................................6, 7, 8

*Mortg. Application Techs., LLC v. Meridianlink, Inc.*,
    No. 19-704, 2020 WL 1000581 (C.D. Cal. Jan. 6, 2020)...................8

*Parker v. Flook*,
    437 U.S. 584 (1978)..........................................................................8

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8,
2017) ........................................................................................................9

*In re Roslin Inst. (Edinburgh)*,
750 F.3d 1333 (Fed. Cir. 2014) ...............................................................6

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*,
No. 6:15-cv-682, 2016 WL 3584195 (E.D. Tex. Jan. 4, 2016)........3, 15

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ...............................................................7

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017) ...............................................................13

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ....................................................2, 13, 16

*In re TLI*,
87 F. Supp. 3d 773 (E.D. Va. 2015) .......................................................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
LLC, 874 F.3d 1329 (Fed. Cir. 2017)..........................................13, 14, 16

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) .....................................................6, 10, 15

*Voip-Pal.com, Inc. v. Apple Inc.*,
No. 18-cv-06217-LHK, 2019 WL 1332762 (N.D. Cal. Mar. 25,
2019) ........................................................................................................8

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
100 F. Supp. 3d 405 (D.N.J. 2015).......................................2, 13, 14, 16

**Federal Statutes**

35 U.S.C. § 101 ........................................ 1, 3, 6, 8, 9, 12, 17, 18

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................3, 5, 9

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 25, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1 – 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612 (or by other means ordered by the Court), Defendant Abaqus, Inc. ("Abaqus") will and hereby does move the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Social Positioning Input System, LLC's ("SPIS") Complaint.

SPIS's Complaint fails to state a claim upon which relief can be granted, as required by Rule 12(b)(6), because the claims of asserted U.S. Patent No. 9,261,365 are directed to an abstract idea that lacks any inventive concept, and are therefore patent-ineligible under *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether the claims of U.S. Patent No. 9,261,365 are patent-ineligible under 35 U.S.C. § 101.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    NATURE AND STAGE OF PROCEEDINGS

On August 30, 2021, SPIS filed this lawsuit accusing Abaqus of infringing U.S. Patent No. 9,261,365 ("the '365 Patent"). In particular, SPIS accuses Abaqus's "asset tracking platform, and any associated hardware, apps, or other software" of infringing the '365 Patent. Dkt. 1 (Complaint), ¶ 13.

### II.    SUMMARY OF THE ARGUMENT

The claims of the '365 Patent are directed to the abstract idea of sharing address information. However, sharing address information is not a technological improvement, an inventive way of applying conventional technology, or even new,

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

as this Court found in a similar case. *See Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015) (finding similar claims directed to the abstract idea of "monitoring **locations**, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and **communicating this information** in various forms through generic computer functions") (emphasis added).

The claims of the '365 Patent are not directed to an improvement in computer functionality. Rather, they are directed to "the use of conventional or generic technology in a nascent but well- known environment*." In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612, 614 (Fed. Cir. 2016) ("[H]ere we need to only look to the specification, which describes the [components] as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art."). No particular non-conventional component or programming is either claimed or disclosed. SPIS's patent does no more than describe the basic idea of sending and receiving information related to addresses without disclosing any novel application of that idea.

Instead, the approach for sharing address information described in the '365 Patent may be implemented using generic and conventional technology such as "communication protocols or systems currently existing . . . for wirelessly transmitting data." '365 Patent at 7:4-5. Indeed, the '365 Patent's specification makes clear that it does not make use of any novel components. *Id.* at 5:67-6:2 ("[s]uch input devices are standard and currently available on many electronic devices including portable digital assistants (PDAs) and cellular telephones."); 6:19-20 ("any other memory storage that exists currently"); 7:20-21 ("conventional code encryption algorithms currently in use"); 8:10-12 ("identity detection devices such as biometric devices are common and are currently widely in use"). Therefore, the

'365 Patent is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter.

The abstract nature of the claims in the '365 Patent is reinforced upon consideration of prior litigation relating to the parent of the '365 Patent, U.S. Patent No. 8,606,503 ("the '503 Patent"). In that litigation, a district court granted a motion to dismiss upon finding all claims in the '503 Patent to be invalid under 35 U.S.C. § 101. *See Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-cv-682, 2016 WL 3584195, at *5-8 (E.D. Tex. Jan. 4, 2016). As seen by a simple side-by-side comparison of representative claims, the claims in the '365 Patent are not meaningfully distinguishable from the claims in the invalid '503 Patent and are still clearly directed to the "well-understood, fundamental concept of retrieving and sending data along with the requirement that it be performed between two 'positional information devices'" and the limitations still "represent only generic computer functions." *Id*. at *5, 7.

Resolving these issues does not require discovery or formal claim construction. To avoid waste of judicial and party resources unnecessarily litigating invalid patents, Abaqus respectfully requests that the Court dismiss the Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

## III.   STATEMENT OF FACTS

The '365 Patent, entitled "Device, system and method for remotely entering, storing and sharing addresses for a positional information device," issued on February 16, 2016, from an application filed on September 9, 2009. The applicant contends to have identified and solved problems associated with GPS devices which store addresses locally. '365 Patent at 1:46-2:25. The patent, however, merely implements an abstract idea using conventional components and communication systems that were known in the prior art. Independent claim 1 of the '365 patent, which is representative, recites:

1. A method for receiving location information at a positional information device, the method comprising:

> sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the request including a first identifier of the requesting positional information device;

> receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device.

*Id*. at cl. 1.

Claim 1 of the '365 Patent is directed to a method of sharing addresses. Methods for sharing addresses with GPS devices are generically described in the specification. *Id*. at 8:23-34 ("system and method for remotely entering, storing and ***sharing location address information*** will be described") (emphasis added). The embodiments described in the specification center on sharing address information. *See id*. at 9:29-32 ("[i]n one embodiment, the customer service center includes a live operator 303 that has access to server 304 for ***looking up address information and transmitting the information to the device***") (emphasis added). The specification also describes a situation in which "[a] driver of a vehicle needs assistance in locating a point of interest such as a museum in a designated city." *Id* at 12:27-28. However, the applicant did not provide any technical details on how information is shared beyond what was known in the prior art.

In Claim 1, a requesting positional information device "send[s] a request . . . for at least one address" to a server. The request includes "a first identifier" for identifying the requesting positional information device. The server obtains the requested address from a "sending positional information device." The sending

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

positional information device is identified by a "second identifier." The positional information devices are understood to be GPS devices. *See id.* at Abstract ("a positional information device, ***e.g., a global positioning system (GPS) device***) (emphasis added). In other words, Claim 1 recites a generic technique to establish a communications link between one or more devices and transfer information. No technical details are disclosed, much less claimed, as to how these processes are accomplished. Claim 1 simply recites generic and well-known hardware components performing standard functions.

## IV.   ARGUMENT

### A.   Legal Standard

#### 1.   Motions To Dismiss Under Rule 12(b)(6)

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A court need not, however, accept as true the complaint's "legal conclusions." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." *Id.* Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct[.]" *Id.* (internal

1

2

quotation marks omitted). Plaintiffs must "nudge [] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

3

### 2. Patent Eligibility

4

5

6

7

8

9

10

11

12

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,* 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Under Section 101 of the Patent Act, the scope of patentable subject matter encompasses "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Laws of nature, natural phenomena, and abstract ideas are excluded from the universe of patentable subject matter. *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). These categories are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1293 (2012) (citations omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary objective of the patent laws. *Id*. at 1293. The eligibility of the asserted claims under 35 U.S.C. § 101, which defines patentable subject matter, is a "threshold" issue for the court to decide as a matter of law. *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014); *Digitech*

27

28

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

1
2

*Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344, 1348 (Fed. Cir. 2014).

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

The Supreme Court has articulated a two-part test for analyzing patent eligibility. *Alice*, 134 S. Ct. at 2355. First, the court determines "whether the claims at issue are directed to a patent ineligible concept." *Id.* Second, if the claim contains such an abstract idea, the court evaluates whether there is, apart from the abstract idea, "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). In other words, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 132 S. Ct. at 1297). Whether an element is well-understood, routine, and conventional under step two is a factual determination, but judgment at the pleadings stage is appropriate "[w]hen there is no genuine issue of material fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Judgment as a matter of law and on the pleadings is likewise appropriate where any alleged innovations under step two are "themselves in the realm of abstract ideas." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018).

20
21
22
23
24
25
26
27

"[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quotation omitted). Similarly, "simply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 132 S. Ct. at 1300. Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294). Indeed, if a claim could be performed in the human mind, or by a human using pen and

28

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

The Section 101 analysis typically begins by comparing the claim at issue to claims with a "similar or parallel descriptive nature" that have been analyzed in previous cases. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1295 (Fed. Cir. 2016) ("We begin, then, with an examination of eligible and ineligible claims of a similar nature from past cases."). The focus of a Section 101 inquiry is on the claims. *Dealertrack, Inc. v. Huber*, 582 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). Motions on Section 101 grounds can be, and routinely are, decided without claim construction. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) (finding subject matter ineligible without performing claim construction); *Voip-Pal.com, Inc. v. Apple Inc.*, No. 18-cv-06217-LHK, 2019 WL 1332762, at *7–*25 (N.D. Cal. Mar. 25, 2019) (same); *Mortg. Application Techs., LLC v. Meridianlink, Inc.*, No. 19-704, 2020 WL 1000581, at *3 (C.D. Cal. Jan. 6, 2020) ("[T]he Court notes that it may properly entertain this [§ 101] motion without construing claims.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.   The '365 Patent is Invalid Under 35 U.S.C. § 101.

SPIS's Complaint should be dismissed. The claims of the '365 Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of sharing address information. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because SPIS has failed to state a claim upon which relief may be granted, Abaqus respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

### 1.   *Alice* Step 1: The claims are directed to an abstract idea.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the '365 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of sharing address information. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611.

### (a)   The '365 Patent is directed to the abstract idea of sharing address information.

Claim 1 of the '365 Patent is directed to the abstract idea of sharing address information.[1]  Stripped of its generic terminology, the claim conceivably could cover

---

[1]   Asserted Claim 1 of the '365 Patent is representative of all claims. *See, e.g., Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

any generic process of sharing address information. This is especially true given the purely functional nature of the claim language. For example, Claim 1 could cover the following scenario: (1) requesting an address from another device via a server (*e.g.*, calling friend Alice to ask for friend Bob's address); and then (2) receiving address information from the other device via the server (*e.g.*, Alice providing Bob's address). Such a broad concept is not patent eligible because it "recite[s] an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

Furthermore, the applicant's purported invention is not limited to any particular implementation. '365 Patent at 4:16-19 ("it is to be understood the principles of the present disclosure may be applied to any type of navigation or positional information device …."); 9:25-29 ("Once connected to the customer service center, the user can communicate with the customer service center with voice communications or with a vehicle user interface (VUI) including but ***not limited to*** keyboard, voice recognition, or mouse or pointer") (emphasis added)). The specification, coupled with the broad functional language in Claim 1, confirms that SPIS's claims do not describe how to implement the allegedly claimed system, much less how to do so in any non-conventional manner. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation").

Additionally, the applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves

data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). For example, in *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in the claims of the '365 Patent shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." *Id.* Therefore, the focus of the '365 Patents is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1336. The "focus" of Claim 1, instead, is sharing address information:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method for receiving location information at a positional information device, the method comprising:<br><br>receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier and retrieves the requested at least one address stored in the identified at least one sending positional information device | Receiving address information |
| sending a request from a requesting positional information device to a server for at least one address stored in at least one sending positional information device, the | Requesting address information |

| request including a first identifier of the requesting positional information device; | |

By only claiming the desired result in a functional manner (requesting and receiving address information), Claim 1 of the '365 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348; *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (holding that claims were directed to an abstract idea where they claimed "the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function"). And because the claimed methods and systems are to be implemented without the use of any specialized hardware or software components, the '365 Patent risks preempting all automated methods or systems for sharing address information. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective").

### (b)   Courts have found similar claims to be directed to patent- ineligible subject matter.

Courts have found similar patent claims to be directed to abstract ideas. Recently, the Federal Circuit held that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson Inc. v. TCL Commc'n Tech. Holdings*, 955 F.3d 1317, 1327 (Fed. Cir. 2020). The claims here are directed to the request and receipt of address information, and are thus similar to the claims at issue in Ericsson, in that these are precisely the types of activities that can be performed by a human without computers. For instance, a party

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

could call a first friend and ask for a second friend's address. The first friend may retrieve the address, and then provide it the requesting party. Because this process can be performed in this fashion, the claims of the '365 Patent are invalid under the same rationale expressed by the Federal Circuit in *Ericsson*.

Additionally, the Federal Circuit has held the following claims directed to various acts of information or data acquisition and transfer (including, among others, acquiring, analyzing, sending, receiving, and publishing data) to be directed to abstract ideas under the *Alice* test:

- Claims directed to ***collecting information***, even when such information is of a particular type. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (emphasis added).

- Claims directed to ***routing information*** using result-based functional language. *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (emphasis added);

- Claims directed to ***transmitting information*** about a mail object over a network using a personalized marking. *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 908 (Fed. Cir. 2017) (emphasis added);

- A device used for recording a digital image, storing the digital image, and ***transferring*** the digital image to a server for further processing. *In re TLI Commc'ns*, 823 F.3d 607, 609 (Fed. Cir. 2016) (emphasis added).

Further, patents related to location information have been found to be directed to the abstract idea of monitoring and communicating information. In *Wireless Media Innovations*, for example, this court invalidated two patents for a system and method of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." 100 F.Supp.3d

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

405, 413 (D.N.J. 2015). This was an abstract idea, according to the court, because these general monitoring and recording functions "could be carried out by human memory, by hand, or by conventional equipment and general purpose computer and printer resources." *Id.* at 415; *see also Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 726, 2017 WL 1151052 (N.D. Ill. 2016) (claims found to be "directed to the abstract idea of monitoring and controlling property and communicating this information through generic computer functions"); *MacroPoint, LLC v. FourKites, Inc.*, No. 15–cv–1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015), aff'd, 671 Fed. Appx. 780 ("directed to the abstract idea of tracking freight").

The idea underlying Claim 1 of the '365 Patent is just as abstract as those in the *Ericsson*, *Two-Way Media* and *Wireless Media Innovations* claims. As explained earlier, Claim 1 describes a common human activity that can be performed without a computer or specialized equipment. Claim 1 does not include any specific limitations or steps regarding a "specific structure" of computer components used to carry out the abstract idea of sharing address information. Rather, Claim 1 uses results-based functional language like "sending a request from a requesting positional information device to a server" and "receiving at the requesting positional information device, from the server, a retrieved at least one address."' 365 Patent at Cl. 1. Claim 1 is abstract because it does "not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337 (holding limitations requiring "sending" and "directing" of information "d[id] not sufficiently describe how to achieve these results in a non-abstract way"). Claim 1 cannot be meaningfully distinguished from the claims in either Ericsson, *Two-Way Media*, or *Wireless Media Innovations*.

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

2.   *Alice* **Step 2: The claims do not contain an inventive concept amounting to significantly more than the abstract idea.**

Because Claim 1 is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '365 Patent is to provide "remotely entering, storing and sharing location addresses," '365 Patent at 2:47-48, not a single technical improvement is disclosed, much less claimed. Instead, Claim 1 is described only at a high level, consisting of generic functional language like "sending a request" and "receiving . . . at least one address." And, according to the specification, no specialized hardware or software is needed to send and receive address information. *Id.* at 8:23; 12:5.

While the specification purports to describe the structure of an embedded system capable of sharing address information, nothing in either Claim 1 or the specification discloses how the "positional information device" must be configured in any manner, much less an inventive one. Instead, the claim limitations simply list generic hardware without any improvement in technology. *See In re TLI*, 87 F. Supp. 3d 773, 794 (E.D. Va. 2015) (holding that a "telephone unit limitation is another example of ***generic hardware*** which does not save Claim 17 because it is ***not inventive***") (emphasis added). And the specification fares no better, as the invention is described as "a system and method of programming GPS units from a link on the Global Computer Network (*e.g.*, the Internet) is also provided." '365 Patent at 2:49-

51. GPS units and the Internet are not novel. *See Rothschild*, WL 3584195, at *5, 7 ("A GPS device is a well-known generic computer element insufficient to make otherwise patent ineligible subject matter patentable"). Further details are neither claimed nor disclosed.

There is simply nothing "inventive" about using known processes (*e.g.*, the Internet and/or wireless networks) to retrieve address information. *See* '365 Patent at 9:38-46 (the invention is "described in the context of the GSM mobile telecommunications standard" but may "relate[] to all telephone standards including, and not limited to CDMA and US-TDMA"). Moreover, the abstract functional descriptions in Claim 1 are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Nothing in Claim 1 requires any inventive algorithm or data structure, much less an improved computer component. *See Wireless Media Innovations*, 100 F. Supp. 3d 405, 416-417 ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible. Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis.").

Courts have repeatedly held that the presence of generic hardware and processing like the kind recited in Claim 1 of the '365 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Two-Way Media*, 874 F.3d at 1339 (finding no inventive concept when "[n]othing in the claims . . . requires anything other than conventional computer and

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
Case No.: 4:21-cv-06704-YGR

network components operating according to their ordinary functions"); *Wireless Media Innovations*, 100 F.Supp. 3d 405, 416 (finding that the asserted claims "are not tied to any particular novel machine or apparatus, only a general purpose computer, general communication devices, and general vehicles," and the "specific system elements . . . merely require generic computer functions that are not inventive."); *see also Bancorp*, 687 F.3d at 1276-77. In addition, an "abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as [GPS Units]." *Intellectual Ventures I LL v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc*., 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id.* But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner. The claims therefore fail *Alice*'s second step because they contain no inventive features, and no amount of fact discovery can change that.

The recited limitations—whether considered individually or as an ordered combination— are insufficient to add "significantly more" to the abstract idea.

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

Because it is altogether devoid of any "inventive concept." Claim 1 of the '365 Patent is thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60.

### 3.     The remaining claims are dependent on Claim 1 and are also abstract

The remaining claims of the '365 Patent relate to the same abstract concept of sending and receiving information. The only differences are immaterial in the context of a § 101 analysis. For example, claim 8 adds only conventional components and broad functional language, for, for example, "a location information module for determining location information of the requesting positional information device." Claim 8 is therefore directed to the same abstract idea, and there is nothing that adds significantly more to transform the ineligible concept. *Alice*, 134 S. Ct. at 2355-57. The dependent claims relate to (i) identifying information (dependent claims 2, 6, 9, and 13), (ii) type of information (dependent claims 3 and 10), and (iii) source and display of information (dependent claims 4, 5, 7, 11, 12, 14, and 15). But claiming variations related to the type and source of information is not inventive. So too is the claims' identification of additional generic components—particularly because there is no disclosure of how any of the generic components (*e.g.*, telematics network) must be configured in any "inventive" manner to accomplish the desired results. *See Internet Patents*, 790 F.3d at 1348.

None of these additional features amounts to an inventive feature or renders the claims any less abstract. Regardless of their form, therefore, all of the claims of the '365 Patent fail both prongs of *Alice* because they are directed to an abstract idea and recite no inventive concept. *Alice*, 134 S. Ct. at 2355, 2357.

## V.     CONCLUSION

For the foregoing reasons, Abaqus respectfully requests that the Court dismiss SPIS's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Abaqus requests dismissal with prejudice.

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR

Dated: December 15, 2021          By:      /s/ Wasif H. Qureshi
                                  Wasif H. Qureshi (admitted *pro hac vice*)
                                  wqureshi@jw.com
                                  Jackson Walker LLP
                                  1401 McKinney, Suite 1900
                                  Houston, TX 77010
                                  Tel: (713) 752-4521

                                  **Counsel for Abaqus, Inc.**


## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2021, I electronically filed the foregoing and accompanying documents with the clerk of the court for the U.S. District Court, Northern District of California, using the Court's electronic case filing system, and thus the foregoing and accompanying documents have been electronically served on counsel of record.

                                  By:      /s/ Wasif H. Qureshi
                                  Wasif H. Qureshi

**ABAQUS'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
CASE NO.: 4:21-CV-06704-YGR